IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:08CR3059 |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM** |
| v. | ) | **AND ORDER** |
| | ) | |
| JAYRO A. FLORES and | ) | |
| JULIO FLORES-ELENES, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on a report and recommendation by Magistrate Judge Piester, recommending (1) that the motion to suppress filed by the defendant Julio Flores-Elenes ("Julio") be denied and (2) that the motion to suppress filed by the defendant Jayro A. Flores ("Jayro") be granted. Julio has filed a statement of objections, pursuant to NECrimR 57.3 and 28 U.S.C. § 636(b)(1), which challenges Judge Piester's conclusion that Julio knowingly and voluntarily consented to a vehicle search. No statement of objections has been filed by the United States or by Jayro. Upon de novo review of the record, I find and conclude that the report and recommendation, excluding footnote 5, should be adopted.

After reviewing the DVD of the traffic stop,[1] I agree with Judge Piester that while it was "abundantly clear from the recording that a reasonable officer would have known from the outset of the conversation that Julio's primary language was

---

[1] Although Julio's brief states that "the DVD of the stop ... was not specifically marked and received into evidence as an exhibit" (filing 52, at CM/ECF p. 2), this is incorrect. The DVD was offered and received as Exhibit 1. *See* filing 46 (exhibit list); filing 50 (transcript), at 5:11-7:1. Defense counsel notified me of this misstatement by email.

Spanish" (filing 48, at CM/ECF p. 9, n. 5), "the evidence does support a conclusion that Julio, with great, labored effort, eventually understood at least most of what Trooper Hazard said or asked." (Filing 48, at CM/ECF p. 3, n. 2.) The recording confirms that Julio "willingly answered the trooper's questions about whether the vehicle contained contraband, and he responded immediately and affirmatively to the question, 'Can I search you vehicle? Can I search your car?'" (Filing 48, at CM/ECF p. 9.) This oral consent was knowing and voluntary.

The evidence also establishes that Trooper Hazard, after obtaining Julio's oral consent to search the vehicle, read to him an English language consent-to-search form, a copy of which is in evidence as Exhibit 4. Trooper Hazard testified that Julio had the form "in front of him" (filing 50, at 57:14-15) and "appeared to be following what I was reading with his eyes, paying attention to what I was doing and nodding in a way that he understood is how I interpreted what he was doing." (Filing 50, at 29:14-17.) The form concluded with a statement that "I'm giving this written permission freely and voluntarily without any threats or promises being made to me and understanding that I have the right to refuse to permit this search." (Filing 50, at 57:2-5.) When Trooper Hazard finished reading the form to Julio, he instructed him to sign it if he understood and agreed. (Filing 50, at 57:5-6.) Julio did not ask any questions about the consent-to-search form, but just "nodded his head yes and signed it." (Filing 50, at 58:21-24.)

Judge Piester states in footnote 5 of his report that "absent the clear evidence of the defendant's verbal consent, there is inadequate evidence to establish that the defendant's *written* consent was knowing and voluntary." (Filing 48, at CM/ECF p. 9, n.5 (emphasis in original).) He notes in this regard that Trooper Hazard read the consent-to-search form quickly and did not inquire whether Julio understood difficult words such as "voluntarily", "authorize", and "assistance" or whether he could read English. Judge Piester therefore places no reliance on the signed form, but merely states that "it did not abrogate the verbal consent given in this case[.]" (*Id.*)

The determinative issue in this case is not whether Julio actually understood what he was signing, but, rather, whether Trooper Hazard reasonably believed that Julio understood and was consenting to the search. "The government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that on the totality of the circumstances the officer reasonably believed that the search was consensual." *United States v. Almendares*, 397 F.3d 653, 660 (8th Cir. 2005) (upholding consent finding even though subject did not speak English). Trooper Hazard testified that Julio appeared to understand what was being read to him, which included an express advisory that he had the right to refuse to permit the search, and that Julio signed the form without hesitation. I find this testimony to be credible and fully supported by the evidence, and conclude from the totality of the circumstances that Trooper Hazard searched the vehicle in the objectively reasonable belief that valid consent, both oral and written, had been obtained from Julio. *See United States v. Sanchez*, 32 F.3d 1330, 1335 (8th Cir. 1994) ("If, considering the totality of the circumstances, it was reasonable for [the officer] to have concluded that [the defendant] voluntarily had consented to the search, the search passed muster under the Fourth Amendment.").

Accordingly,

IT IS ORDERED:

1. That the magistrate judge's report and recommendation (filing 48), excluding footnote 5, is adopted.

2. That the defendant Julio Flores-Elenes' motion to suppress (filing 28) is denied.

3. That the defendant Jayro A. Flores' motion to suppress (filing 26) is granted, and any statements that said defendant made to Investigator

Shelton during an interview at the Kearney office of the Nebraska State Patrol on April 21, 2008, after giving his name and address, shall not be admissible in evidence.

August 28, 2008.                        BY THE COURT:

                                        s/ *Richard G. Kopf*
                                        United States District Judge